UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**07 CIV 9650**

ANDRÉ PIERRE GAS AND LA SOCIÉTÉ
GAS BIJOUX,

Plaintiffs,

v.

CLAIRE'S STORES, INC., AND
DUALSTAR ENTERTAINMENT GROUP,
LLC,

Defendants.

DOCKET NO. _____

JURY TRIAL REQUESTED

OCT 30 2007
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT

Plaintiffs André Pierre Gas and La Société Gas Bijoux (collectively, "GAS"), by their undersigned attorneys, as and for their complaint against Defendants Claire's Stores, Inc. ("CSI") and Dualstar Entertainment Group, LLC ("Dualstar") (collectively "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs design, manufacture and market high-quality and high-fashion jewelry sold world-wide, including in the United States. Dualstar, the entertainment and fashion conglomerate run by former child stars Mary Kate and Ashley Olsen, improperly copied and manufactured bracelets that are substantially similar, if not virtually identical, to bracelet designs created and owned by GAS. Dualstar entered into a partnership with the jewelry and accessory retailer CSI to sell the infringing, counterfeit bracelets in the United States and Europe.

2.      Plaintiffs assert the following causes of action against Defendants: infringement of Plaintiffs' unregistered trademarks and trade dress in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125; false designation of origin and false descriptions and representations in commerce in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125;

copyright infringement in violation of 17 U.S.C. § 501 *et seq.*; common law unfair competition under New York law; common law trademark infringement under New York law; and violation of Section 360-*l* of New York General Business Law. Plaintiffs seek damages, an accounting of each Defendant's infringing profits, impoundment and destruction of the infringing jewelry, and injunctive relief to the extent that infringing jewelry is still being sold under both the Lanham Act and the Copyright Act.

## JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over Dualstar because it is licensed to transact business in this State. This Court has personal jurisdiction over CSI because CSI transacts business in the State of New York and in this judicial district specifically.

4.      This Court has original subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a), as the state and federal claims derive from a common nucleus of operative facts and form part of the same case or controversy.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## PARTIES

6.      Plaintiff Andre André Pierre Gas is a citizen of France and a resident of Marseilles, France.

7.      Plaintiff La Société Gas Bijoux is a French corporation which either owns or has authorized numerous store locations in France (including Marseilles, Paris and Saint-

Tropez), New York and Los Angeles. The New York location is in Soho at 238 Mott Street, New York, New York 10012.

       8.    Defendant CSI is a Florida corporation with its principal place of business at 3 S.W. 129th Avenue, Pembroke Pines, Florida 33027. CSI does business in New York State and in this judicial district, and operates a New York office at 350 Fifth Avenue, Suite 900, New York, New York 10118 at which CSI's Corporate Communications and Investor Relations departments are located.

       9.    Defendant Dualstar is a California limited liability company with its principal place of business at 3760 Robertson Boulevard, Culver City, California 90232. Dualstar is licensed by the New York State Department of State to transact business in New York. Upon information and belief, Dualstar also maintains an address at 1801 Century Park East, 12th Floor, Los Angeles, CA 90067.

## FACTS

**A.**    **History of La Société Gas Bijoux and André Pierre Gas**

      10.    For over 40 years, André Pierre Gas has designed, manufactured and marketed unique, high-end and high fashion jewelry of world renown (hereinafter, "Gas Bijoux jewelry").

      11.    The Gas Bijoux mark was launched in or around 1972 in Saint Tropez, France with the opening of the first Gas Bijoux boutique, and was later expanded by the opening of other boutiques in Paris, Marseille and New York. Most recently, Gas Bijoux opened two new boutiques: one in Paris on the famous Avenue George V in March 2007, and the other in Los Angeles in April 2007.

{A060633.DOC\4}

12.    Besides its own boutiques, Gas Bijoux jewelry is marketed exclusively through approximately 300 high-end, prestigious retailers throughout the world, such as Neiman Marcus and Bloomingdale's in the United States; Le Printemps and Le Bon Marché in Paris; Harrods in the United Kingdom; and Holt Renfrew in Canada.

13.    Gas Bijoux jewelry has been sold in the United States since as early as October 1980.

14.    André Pierre Gas draws inspiration from ethnic, baroque, Eastern, Southern France and Saint-Tropez influences when designing his bracelets, earrings and necklaces. André Pierre Gas incorporates many different materials into his jewelry pieces, such as metal, crystal, enamel, resin, coral and turquoise.

15.    GAS uses high quality materials in the creation of his jewelry pieces, including Swarovski crystal and rhinestones and hand-polished gold and silver plated materials. Upon request, GAS will create jewelry pieces in solid gold or silver.

16.    Gas Bijoux spends substantial amounts of money to promote and advertise its jewelry extensively in the United States, spending approximately US$5,000 per month in 2007 alone, and over US$300,000 worldwide.

17.    As a result of GAS' exclusive designs, high quality craftsmanship and worldwide marketing, Gas Bijoux jewelry has come to enjoy widespread success and public recognition around the world. In the United States, Gas Bijoux jewelry has been exclusively associated with high-end designer boutiques in exclusive neighborhoods, and has become popular among celebrities such as entertainment stars such as Eva Longoria, Jennifer Lopez, Karen Mulder and the many well-known attendees at high profile events (such as American

{A060633.DOC\4}

Foundation for AIDS Research [amfAR] dinners) at which GAS has donated its jewelry to benefit such worthy charitable causes.

18.     Given the quality of the materials used in Gas Bijoux jewelry and the exclusive clientele it enjoys, consumers are happy to pay premium prices for Gas Bijoux jewelry. For example, retail prices include approximately $175.00 (125 Euro) for Gas Bijoux "charm" bracelets and approximately $92.00 (65 Euro) for so-called Gas Bijoux "ressort" bracelets.

B.     **GAS' Intellectual Property**

19.     GAS zealously protects its rights in its name and its jewelry.

20.     GAS has obtained a French trademark in the mark "GAS BIJOUX".

21.     GAS also has obtained French design protection for its jewelry designs.

22.     As GAS' jewelry designs constitute protectable works created in France, a Berne Convention country, GAS is entitled to copyright protection in the United States and to institute this action for copyright infringement without the need for any registration of its copyrights with the Library of Congress.

23.     Moreover, GAS claims rights in an unregistered trademark for a stylized form of the mark "GAS", which appears on various items of Gas Bijoux jewelry.  The letters are capitalized and depicted in an angular, block-like font, in the following manner (the "Angular Trademark"):



24.     GAS also owns the protectable trade dress in its unique and distinctive jewelry designs, as consumers have come to recognize GAS as the source of jewelry containing or consisting of such designs.

5

25.    The protectable jewelry designs at issue in this action are the following five bracelets (the foregoing jewelry designs will be referred to as the "Protected Bracelets"):

## The Trade Dress of the Mini Key Bracelet

26.    André Pierre Gas created the Mini Key Bracelet in or around December 2005. The trade dress of the Mini Key Bracelet consists of a unique assemblage of design elements. A true and complete picture of GAS' Mini Key Bracelet is attached hereto as Exhibit A. The combination of such design elements gives the Mini Key Bracelet a distinct overall look and commercial impression, consisting of:

a.    A highly stylized small silver-plated key through which a cord is attached.

b.    The key bears the inscription "GAS Saint Tropez" in which the Angular Trademark appears over the words "Saint Tropez".

c.    Gems are attached to either side of cord hole at the top of the key, two above the letter "G", and two above the letter "S".

d.    Another gem is in the center of an eight-pointed star design.

e.    Two round silver beads are threaded to the ends of the key.

f.    The closing mechanism is a slipknot on each side.

g.    A small, round charm medal is affixed to the cord, bearing the inscription "GAS Bijoux".

## The Trade Dress of the Key Bracelet

27.    André Pierre Gas created the Key Bracelet prior to February 2004. The trade dress of the Key Bracelet consists of a unique assemblage of design elements. A true and complete picture of GAS' Key Bracelet is attached hereto as Exhibit B. The combination of

such design elements gives the Key Bracelet a distinct overall look and commercial impression, consisting of:

a.    A highly stylized silver-plated key bearing arabesque imprints on its bow through which a cord is attached.

b.    It includes a groove down the center of the key and three "teeth" set into the side of the key.

c.    Threaded to each end of the key is a silvery cube bead, the sides of which bear a star or a sun design.

d.    The closing mechanism is a slipknot on each side of the key.

e.    A small, round charm medal is affixed to the cord, bearing the inscription "GAS Bijoux".

## The Trade Dress of the Tag Bracelet

28.    André Pierre Gas created the Tag Bracelet prior to September 2004.  The trade dress of the Tag Bracelet consists of a unique assemblage of design elements.   A true and complete picture of GAS' Tag Bracelet is attached hereto as Exhibit C.  The combination of such design elements gives the Tag Bracelet a distinct overall look and commercial impression, consisting of:

a.    The Tag Bracelet features a cord-mounted rectangular silver-plated plaque bearing the following inscription in the following configuration:

```
N.Y.S
DOG TAG
270683
1958
```

b.     The four corners of the plaque each bear a small, round metallic flower with two gemstones abutting each flower.

c.     Threaded to each end of the plaque is a silvery cube-like bead.

d.     The closing mechanism is a slipknot on each side of the plaque.

e.     A small, round charm medal is affixed to the cord, bearing the inscription "GAS Bijoux".

## The Trade Dress of the "Silver and Color" Ressort Bracelet

29.     André Pierre Gas created the "Silver and Color" Ressort Bracelet prior to January 2003. The trade dress of the "Silver and Color" Ressort Bracelet consists of a unique assemblage of design elements. A true and complete picture of GAS' "Silver and Color" Ressort Bracelet is attached hereto as Exhibit D. The combination of such design elements gives the "Silver and Color" Ressort Bracelet a distinct overall look and commercial impression, consisting of:

a.     A group of seven silver-plated stainless steel bracelets.

b.     Each bracelet is affixed to a central spring.

c.     The seven bracelets are threaded with charms such as metallic flowers, feathers, metal beads, blue and brown glass beads, a blue glass butterfly, imprinted half-moons, and other assorted metallic elements such as a small heart charm on which small stars are imprinted.

d.     A small, round charm medal is affixed to one of the bracelets, bearing the inscription "GAS Bijoux".

8

## The Trade Dress of the Ressort Gem Bracelet

30.    André Pierre Gas created the Ressort Gem Bracelet prior to January 2003. The trade dress of the Ressort Gem Bracelet consists of a unique assemblage of design elements. A true and complete picture of GAS' Ressort Bracelet is attached hereto as Exhibit E. The combination of such design elements gives the Ressort Bracelet a distinct overall look and commercial impression, consisting of:

     a.    A group of seven silver-plated bracelets.

     b.    Each bracelet is affixed to a central spring.

     c.    The seven bracelets are threaded with charms such as metallic flowers, hearts, half circles with flowers and caret-like symbols (i.e., ^) imprinted on them, and other assorted metallic elements.

     d.    The bracelet also contains three metallic tubes with barrettes adorned with eight gemstones.

     e.    Small, round charm medals are affixed to one of the bracelets, bearing the inscription "GAS Bijoux".

31.    André Pierre Gas has transferred his rights in the designs of the Protected Bracelets described above to GAS. Said designs are non-functional.

## C.    Defendants' Background and Infringing Activities

32.    Upon information and belief, Dualstar was created in 1993 to leverage the popularity of child stars Mary Kate and Ashley Olsen (the "Olsen Twins"), who both played the youngest daughter on the television show *Full House*. Upon information and belief, as the Olsen Twins have grown up, so has their popularity and influence with the "tween" girl demographic (ages 5-12). Now, Dualstar is not only involved in entertainment, but it has also expanded its

9

reach into fashion and lifestyle products, primarily under the *mary-kateandashley* brand name (hereafter, the "MKA Brand").

33.     Upon information and belief, CSI is a retailer of value-priced jewelry and accessories for girls and young women with over 2,100 stores in North America (including in New York State and in this district) and over 850 stores in Europe.

34.     In or around February 2006, Dualstar entered into a partnership with CSI to market and sell MKA Brand fragrances and cosmetics.  A true and complete copy of a press release regarding the partnership is attached hereto as Exhibit F.

35.     Upon information and belief, given the apparent success of the sales of MKA Brand fragrances and cosmetics, in or around May 2006, Dualstar and CSI expanded their partnership to include MKA Brand jewelry and accessories.  A true and complete copy of a press release regarding the expansion of the partnership is attached hereto as Exhibit G.

36.     In or around July 2006, GAS learned for the first time that a number of MKA Brand bracelets sold by CSI in the United States and France infringed upon GAS' protected jewelry designs.

37.     In August and October 2006, GAS representatives purchased samples of MKA Brand jewelry that infringes upon the Protected Bracelets (the "Infringing Bracelets") from CSI stores in New York City and Los Angeles.  True and complete copies of receipts from purchases of infringing jewelry are attached hereto as Exhibit H.

38.     Specifically, Defendants manufactured, imported, marketed, advertised, offered for sale and sold five styles of bracelets that clearly infringe upon GAS' Protected Bracelets:

{A060633.DOC\4}

a.   **Mini Key Bracelet** - Defendants sold a bracelet that not only
infringed upon the trade dress of GAS' Mini Key Bracelet, but also
infringed upon the unregistered Angular Trademark.  Indeed,
Defendants' infringing bracelet was comprised of a small metallic
key to which a cord is attached; the key bears a slavish replication
of the Angular Trademark under which the words "Saint Tropez"
are inscribed; gems are attached to either side of the cord hole, two
above the letter G and two above the letter S; another gem is
attached in the center of an eight-pointed star design; two rounded
metallic beads are threaded to the ends of the key and a small
round charm medal is attached to the cord.  A true and complete
photo comparison of GAS' Mini Key Bracelet and Defendants'
Infringing Bracelet is re attached hereto as Exhibit I.

b.   **Key Bracelet** – Defendants' key bracelet plainly infringes upon
the trade dress of GAS' Key Bracelet.  Defendant's infringing
bracelet is a highly stylized silver-colored metallic key bearing
arabesque imprints with a cord attached through the key's bow.
There is a groove set down the center of the key and three "teeth"
are set into the side of the key. A silver metallic cube bead with a
star or sun design is threaded to each end of the key.  Finally, there
is a small, round charm medal affixed to the cord.  A true and
complete photo comparison of GAS' Key Bracelet and
Defendants' Infringing Bracelet is re attached hereto as Exhibit J.

{A060633.DOC\4}

c.    **Tag Bracelet** – Defendants slavishly copied the trade dress of GAS' Tag Bracelet. Defendants' infringing bracelet features a cord-mounted rectangular plaque that, incredibly, bears the same exact inscription - including the same letters, numbers, punctuation and configuration as GAS' Tag Bracelet. Further, each of the four corners of the plaque bear a small, round metallic flower with two gemstones abutting each flower; a silver metallic cube is threaded to each end of the plaque; and a small, round charm medal is affixed to the cord. A true and complete photo comparison of GAS' Tag Bracelet and Defendants' Infringing Bracelet is re attached hereto as Exhibit K.

d.    **"Silver and Color" Ressort Bracelet** – Defendants likewise infringed the trade dress of GAS' "Silver and Color" Ressort Bracelet. Defendants' infringing bracelet is a group of three metallic bracelets that are affixed together and threaded with charms such as metallic flowers, feathers, metal beads, blue and brown beads, a blue butterfly, imprinted half-moons, and other assorted metallic elements such as a small heart charm with small stars imprinted on it. Further, a small, round charm medal is affixed to one of the bracelets. A true and complete photo comparison of GAS' "Silver and Color" Ressort Bracelet and Defendants' Infringing Bracelet is re attached hereto as Exhibit L.

{A060633.DOC\4}

e.   **Ressort Gem Bracelet** - Defendants also infringed upon the trade dress of GAS' Protected Ressort Gem Bracelet. Defendants' infringing bracelet is a group of metallic bracelets affixed together that are threaded with charms such as metallic flowers, hearts, half circles with flowers and caret-like symbols (i.e., ^) imprinted on them, and other assorted metallic elements. The infringing bracelet also contains three metallic tubes with barrettes adorned with eight gemstones – the same exact number of tubes and gems as in GAS's Protected Bracelet. Finally, small, round charm medals are affixed to one of the bracelets. A true and complete photo comparison of GAS' Ressort Gem Bracelet and Defendants' Infringing Bracelet is re attached hereto as Exhibit M.

39.   Upon information and belief, Defendants have employed one or more companies in China to manufacture and import the Infringing Bracelets into the United States.

40.   Upon information and belief, CSI has marketed, advertised and sold the Infringing Bracelets in its stores throughout the United States and abroad.

41.   Moreover, Infringing Bracelets have been marketed and advertised by Dualstar and CSI on both CSI's website (www.claires.com) and the Olsen Twins' official website (www.mary-kateandashley.com). True and complete copies of web pages showing infringing MKA Brand jewelry from the CSI and Olsen Twins websites are attached hereto as Exhibits N and O.

42.   GAS took action in the French courts to redress the French counterfeiting activity by Claire's France. On or about November 6, 2006, GAS obtained authorization from a

13

French tribunal to execute a counterfeit seizure order at the headquarters of Claire's France and at various Claire's Stores in France. That order was executed on or about November 10, 2006, and numerous counterfeit items were seized.

43.    Upon information and belief, CSI and Dualstar also marketed and sold counterfeit copies of Gas Bijoux jewelry in the United States, and marketed such products widely. For example, the magazine *"Dream Up"* created a special Mary-Kate and Ashley edition which offered the Key Bracelet, the Mini Key Bracelet and the Tag Bracelet as prizes in a contest.

44.    The design and trade dress of Infringing Bracelets which GAS purchased from CSI is substantially similar, if not virtually identical, to GAS' Protected Bracelets.

45.    Given these striking similarities, the Infringing Bracelets' features cannot have been independently designed and were obviously copied from GAS' Protected Bracelets in an attempt to convert GAS' worldwide reputation to the benefit of Defendants.

46.    The Infringing Bracelets are of shoddy quality and made with inferior materials.

47.    Unlike GAS' Protected Bracelets, which retail for approximately $92.00 to $175.00 per bracelet, the Infringing Bracelets sold by CSI retail for approximately $8.50 per bracelet.

48.    GAS has no adequate remedy at law.

{A060633.DOC4}

## COUNT ONE
### (TRADE DRESS INFRINGEMENT – LANHAM ACT)

49.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 48 hereof, as though fully set forth herein.

50.    The trade dress in the design of each of the GAS' Protected Bracelets described above is used in commerce, is non-functional, is inherently distinctive and has acquired secondary meaning in that GAS is recognized as the source of the Protected Bracelets.

51.    Defendants, without permission or authorization from GAS, copied, manufactured, imported, marketed, advertised, offered for sale and sold in the United States Infringing Bracelets that consist of and/or incorporate designs that are confusingly similar to the trade dress in the Protected Bracelets.  See Exhibits I, J, K, L and M.

52.    Defendants' conduct is likely to cause confusion, mistake, or to deceive consumers as to the source, origin and sponsorship of the Infringing Bracelets, and/or is likely to cause consumers to believe that there is an affiliation, connection or association between Dualstar/CSI and Gas Bijoux, when there is no such affiliation, connection or association.

53.    Upon information and belief, Defendants have made substantial profits from their sale of Infringing Bracelets.

54.    Upon information and belief, after receiving notice from GAS of the alleged infringements, Defendants purportedly stopped distributing the Infringing Bracelets; however, there may be old stock that is still being distributed.  Accordingly, plaintiffs demand and are entitled to preliminary and permanent injunctive relief to preclude Defendants from further damaging GAS in future.

55.    Defendants' acts have damaged GAS.

{A060633.DOC\4}

56.    Defendants' wrongful conduct arises directly out of and is connected to their advertising activities.

## COUNT TWO
## (FALSE DESIGNATION OF ORIGIN – LANHAM ACT)

57.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 56 hereof, as though fully set forth herein.

58.    GAS is the owner of the intellectual property rights associated with the Protected Bracelets.

59.    The appearances of the Protected Bracelets constitute inherently distinctive trade dress.

60.    Moreover, GAS has used the Angular Trademark as a source identifier for its Mini Key Bracelet.

61.    Plaintiffs created, manufactured, marketed and sold the Protected Bracelets, and have realized substantial income from such sales.

62.    The Protected Bracelets, the trade dress in each of them and the Angular Trademark are recognized by consumers as distinctive, and have thus developed and now possess secondary trademark meaning to consumers, who associate Gas Bijoux as the source of the Protected Bracelets.

63.    Defendants' conduct constitutes false designation of origin, false descriptions and representations, and infringement of the trade dress in and to the Protected Bracelets.  Specifically, Defendants have created, imported, manufactured, marketed, advertised, offered for sale and sold knock-off Infringing Bracelets that are virtually identical to GAS' Protected Bracelets, which is likely to cause confusion, cause mistake or to deceive as to the affiliation, connection or association of Defendants with Plaintiffs, or as to the origin,

sponsorship, or approval of Defendants' goods, services or commercial activities by Plaintiffs, in violation of 15 U.S.C. § 1125(a)(1)(A).

64.    Plaintiffs have been and continue to be damaged by Defendants' activities and conduct. Defendants have profited thereby and unless enjoined, Plaintiffs and their goodwill and reputations will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

65.    Defendants' wrongful conduct arises directly out of and is connected to their advertising activities.

## COUNT THREE
### (UNFAIR COMPETION – LANHAM ACT)

66.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 65 hereof, as though fully set forth herein.

67.    Defendants' conduct constitutes an attempt to pass off and palm off their inferior products as Plaintiffs' Protected Bracelets with the intent to deceive and defraud the public and appropriate to itself Plaintiffs' rights in and to the Protected Bracelets. Such acts constitute acts of unfair competition against Plaintiffs under 15 U.S.C. § 1125(a)(1)(B).

68.    Plaintiffs have been and continue to be damaged by Defendants' activities and conduct. Accordingly, Plaintiffs are entitled to recover their damages, as well as Defendants' profits received as a result of the infringement, pursuant to 15 U.S.C. § 1117(a).

69.    Unless Defendants' conduct is enjoined, Plaintiffs and their goodwill and reputations will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

70.    Defendants' wrongful conduct arises directly out of and is connected to their advertising activities.

17

{A060633.DOC\4}

## COUNT FOUR
### (COPYRIGHT INFRINGEMENT)

71.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 70 hereof, as though fully set forth herein.

72.    Plaintiffs are the owners of copyright rights in France in the designs of each Protected Bracelet.

73.    Upon information and belief, Defendants' representatives and/or agents had access to GAS' Protected Bracelets. Indeed, in an interview of the Olsen Twins posted on CSI's website in or around October 2006, Ashley Olsen stated that Saint-Tropez and Brigitte Bardot influenced her fashion choices. A true and complete copy of a webpage from the CSI website to that effect is attached hereto as Exhibit O.

74.    Defendants, without permission or authorization from GAS, copied, manufactured, imported, marketed, advertised, offered for sale and sold in the United States Infringing Bracelets that consist of designs and/or incorporate design elements that are substantially similar, if not virtually identical, to the designs of the Protected Bracelets.

75.    Upon information and belief, Defendants have made substantial profits from their sale of Infringing Bracelets.

76.    Plaintiffs are entitled to recover damages, which include its actual losses and any and all profits Defendants have made as a result of their infringing conduct. 17 U.S.C. § 504. Alternatively, Plaintiffs are entitled to statutory damages under 17 U.S.C. § 504(c).

77.    Upon information and belief, Defendants' actions are willful, in that their actions were, at a minimum, in reckless disregard of Plaintiffs' rights in and to the Protected Characters. Accordingly, the award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

18

{A060633.DOC\4}

78.    Moreover, as there may still be remaining stock of Infringing Bracelets being sold in the United States, GAS will continue to be damaged by Defendants' activities and conduct unless preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502 is awarded.

79.    Defendants' wrongful conduct arises directly out of and is connected to their advertising activities.

**COUNT FIVE**
**(COMMON LAW UNFAIR COMPETITION)**

80.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 79 hereof, as though fully set forth herein.

81.    Defendants' actions as described above have been undertaken with the intention of benefiting from and profiting upon the design and associated good will connected with the Protected Bracelets. This goal is accomplished by Defendants' use of the trade dress owned by Plaintiffs.

82.    Defendants' use of trade dress owned by Plaintiffs is intended to, and unless restrained by this Court, will lead the public to believe that there is a connection or association between Defendants and Plaintiffs, when in fact there is none.

83.    Upon information and belief, Defendants have made and will continue to make considerable profit as the direct result of their wrongful actions, which have been undertaken in wanton, willful and reckless disregard of Plaintiffs' rights.

84.    Defendant's actions injure Plaintiffs' reputation and goodwill and expressly mislead the public by falsely imputing a connection or relationship between Defendant's inferior products and Plaintiffs' Protected Bracelets, will cause Plaintiffs to suffer

{A060633.DOC\4}

financially, and constitute unfair competition in derogation of the common law of the State of New York.

**COUNT SIX**
**(VIOLATION OF SECTION 360-L OF THE NEW YORK GENERAL BUSINESS LAW)**

85.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 84 hereof, as though fully set forth herein.

86.    The Protected Bracelets are unique and distinctive and have acquired secondary meaning in the marketplace.

87.    Defendants' acts as described above are likely to dilute, have diluted and, unless enjoined, will continue to dilute the unique and distinctive quality of Plaintiffs' trade dress in the Protected Bracelets.

88.    Specifically, Defendants' creation, marketing and sale of bracelets incorporating trade dress that is substantially similar or virtually identical to that of the Protected Bracelets blur and dilute Plaintiffs' trade dress in the Protected Bracelets as unique identifiers of Plaintiffs' jewelry products.

89.    Alternatively, the shoddy quality of Defendants' Infringing Bracelets tarnishes and dilutes Plaintiffs' trade dress as the purchasing public will associate the lack of quality of Defendants' Infringing Bracelets with Plaintiffs.

90.    Defendants' conduct violates Section 360-*l* of the New York General Business Law.

91.    As a direct and proximate result of Defendants' willful and wanton acts and conduct, Plaintiffs' reputation and good will have been damaged.

92.    Defendants' acts and conduct cause irreparable injury to Plaintiffs and to their reputation and good will, and will continue to do so unless enjoined by this Court.

20

93.    Plaintiffs have no adequate remedy at law.

94.    Defendants' wrongful conduct arises directly out of and is connected to Defendants' advertising activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

1.    That Defendants and their respective agents, servants, employees, contractors, and all persons, firms, corporations, or entities acting under Defendants' direction, authority, or control, and all persons acting in concert with any of them, be enjoined preliminarily and permanently from:  (a) creating, importing, purchasing, distributing, displaying, selling, offering to sell bracelets and/or other jewelry that infringes upon the Protected Bracelets;  (b) using Plaintiffs' copyrights, trademarks, and trade dress, or any copy or imitation of any of them in any manner, including, but not limited to advertising, promoting, and/or marketing jewelry; and (c) committing or inducing others to commit any other infringing acts calculated to cause purchasers to believe that Defendants' Infringing Bracelets are Plaintiffs' genuine products;

2.    That Defendants be required to account pursuant to 17 U.S.C. § 504 and 15 U.S.C. § 1117 for Plaintiffs' losses and Defendants' profits derived from advertising, promoting, marketing, purchasing, distributing, displaying, selling, offering to sell the Infringing Bracelets;

3.    That Defendants be ordered to pay damages for copyright infringement;

4.    That Plaintiffs be awarded damages in an amount to be determined at trial in connection with Defendants' acts of trademark infringement, unfair competition, and dilution of Plaintiffs' trademark and trade dress under both the Lanham Act and New York law;

{A060633.DOC\4}

5.    That all Infringing Bracelets and all advertising incorporating Plaintiffs' copyrights, trademarks, and trade dress, or any copy or imitation of any of them, and any dies used to create the Infringing Bracelets be surrendered, impounded, and destroyed pursuant to Lanham Act, 15 U.S.C. § 1118 and Copyright Act, 17 U.S.C. § 503;

6.    That Defendants be ordered to pay Plaintiffs' costs incurred herein, including reasonable attorneys' fees;

7.    That trebling of damages be ascertained for all trademark damages assessed herein;

8.    That exemplary and punitive trademark damages be awarded; and

9.    That Plaintiffs be awarded such other and further relief as is just, proper, and equitable.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all issues so triable.

DATED:    New York, New York
          October 29, 2007

COWAN, DeBAETS, ABRAHAMS &
SHEPPARD LLP

By: _____
    Toby M. J. Butterfield
    Matthew A. Kaplan

41 Madison Avenue, 34th Floor
New York, New York 10010
Tel: (212) 974-7474
Fax: (212) 974-8474

Attorneys for Plaintiffs
ANDRÉ PIERRE GAS AND LA SOCIÉTÉ
GAS BIJOUX